[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15059
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-00113-MP-GRJ

LINDA K. KENT,

Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 7, 2016)

Before HULL, JORDAN and JULIE CARNES, Circuit Judges.

PER CURIAM:

Linda Kent appeals the district court's order affirming the Social Security Administration's ("SSA") denial of her application for disability insurance benefits.  Kent suffers from the severe impairments of major depressive disorder, generalized anxiety disorder, obesity, and migraines.  On appeal, Kent challenges the administrative law judge's ("ALJ") decision to give "little weight" to the opinion of her treating psychiatrist, Dr. Michael Marchese, about the degree of Kent's mental limitations.  After review, we affirm.

In weighing medical opinions, the ALJ must give a treating physician's opinion "substantial or considerable weight" unless the ALJ articulates good cause for not doing so.  Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011); see also 20 C.F.R. § 404.1527(c)(2) (providing that the ALJ will give "good reasons" for not giving controlling weight to a treating source's opinion).  "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Winschel, 631 F.3d at 1179 (quotation marks omitted).  Here, the ALJ's reasons for discounting Dr. Marchese's opinion amount to good cause and are supported by substantial evidence.[1]

---

[1]Our review is limited to whether the ALJ's decision is supported by substantial evidence and based on proper legal standards.  Winschel, 631 F.3d at 1178.  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to

Relevant to this appeal, Dr. Marchese opined in his mental residual functional capacity ("MRFC") assessment[2] that Kent had "marked" restrictions in her ability to: (1) remember locations and work-like procedures; (2) understand and remember very short and simple instructions; (3) carry out detailed instructions; (4) perform activities within a schedule and be punctual; (5) work in proximity to others without distraction; (6) make simple work-related decisions; (7) interact appropriately with the general public; (8) ask simple questions or request assistance; (9) get along with co-workers; (10) respond to changes in the work place; and (11) set realistic goals and make plans.  Dr. Marchese opined that Kent had "extreme" restrictions in her ability to: (1) understand and remember detailed instructions; (2) maintain attention and concentration for extended periods of time; (3) sustain an ordinary routine without special supervision; (4) complete a normal workday and workweek and perform at a consistent pace; (5) accept instructions and respond appropriately to a supervisor's criticism; and (6) travel in unfamiliar places or use public transport.[3]

---

support a conclusion."  Id. (internal quotation marks omitted).  Under this limited standard of review, we do not make findings of fact, reweigh the evidence, or substitute our judgment for that of the ALJ.  Id.

[2]Residual functional capacity is the most a claimant can do despite any physical or mental limitations caused by the impairment and its related symptoms.  20 C.F.R. § 404.1545(a)(1).

[3]Dr. Marchese's MRFC assessment form explained that the level of restriction was "marked" if the ability to function in the area was very seriously limited and was "extreme" if there was no useful ability to function in the area.

3

The ALJ gave Dr. Marchese's MRFC assessment "little weight."  The ALJ explained that Dr. Marchese's opinion that Kent had "marked" or "extreme" mental limitations was inconsistent with "the record as a whole" and in particular with "objective mental status findings," including Dr. Marchese's own findings, "which reflect a consistently fair ability in memory, concentration, and attention and no evidence of suicidal or homicidal ideation."  The ALJ further noted that Dr. Marchese's MRFC opinion was inconsistent with the Global Assessment of Functioning ("GAF") scores Dr. Marchese had assigned in his treatment notes, which indicated "no more than moderate symptoms" and at times "no symptoms to only mild symptoms."[4]

In part because of the little weight given to Dr. Marchese's MRFC assessment, the ALJ concluded that Kent did not satisfy the "paragraph B" criteria in Listing 12:04 (affective disorders) or Listing 12.06 (anxiety-related disorders) and thus did not meet or medically equal a listed impairment.[5]  The ALJ further

_____

[4]According to the DSM-IV, GAF is a standard measurement of an individual's overall functioning "with respect only to psychological, social, and occupational functioning" using a 1 to 100 point scale.  American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders 30-32 (4th ed. 2000).  A score between 41 and 50 indicates serious symptoms or impairments, a score between 51 and 60 indicates moderate symptoms or impairments, a score between 61 and 70 shows mild symptoms or impairments, while a score between 71 and 80 represents no more than slight impairments.  Id. at 32.  Dr. Marchese assigned Kent GAF scores between 54 and 76.

[5]To meet or equal one of these listings under paragraphs A and B, and thus to be considered disabled, the ALJ had to find, among other things, that Kent had at least two of the following: marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or

concluded that Kent had the residual functional capacity to perform a full range of work at all exertional levels except for the following "nonexertional limitations," that Kent: (1) "is limited to performing simple repetitive tasks"; and (2) "is limited to performing work where changes in the workplace are infrequent and gradually introduced." Based on this RFC finding and a vocational expert's testimony, the ALJ determined that, although Kent could not perform her past relevant work, she could perform other work that exists in the national economy, such as dining room attendant, night cleaner, and mail room clerk. The ALJ thus concluded that Kent was not disabled.

The ALJ articulated good cause for giving Dr. Marchese's opinion less weight, specifically that it was inconsistent with objective mental status findings, including those in Dr. Marchese's own medical records. Moreover, the ALJ's articulated reasons are supported by substantial evidence.

Kent's medical records indicate a period of significant instability in the first half of 2009, which is reflected in the record with GAF scores at or below 50, a brief two-day commitment to Shands Vista, and depression and anxiety. At the time, however, Kent was undergoing significant life stressors, including her husband's recent death and her ex-husband's stalking behavior, and Kent reported

---

repeated episodes of decompensation of extended duration. See 20 C.F.R. § 404.1525 & pt. 404, subpt. P, app. 1, Listing 12.00(A), 12.04(B), 12.06(B).

that her stay at Shands Vista was due to an accidental overdose, not to a suicide attempt.  By July 2009, Kent was working part time.

Moreover, Kent appeared to improve throughout treatment, especially after she was referred to Dr. Marchese in April 2010.  In addition to treating her depression and anxiety, Dr. Marchese diagnosed her with ADHD, for which he prescribed Adderall, and convinced Kent to attend a bereavement group.  Dr. Marchese's records tended to show a positive response to treatment, which was conducted on an outpatient basis.  Additionally, after Kent began seeing Dr. Marchese, her GAF scores tended to range between 54 and 76, indicating moderate to mild symptoms, and her brief downturns corresponded to life stressors, such as going through her deceased husband's belongings or her grandson's accident.  Additionally, Dr. Marchese routinely listed Kent's memory, judgment, and insight as fair and often indicated her mood was euthymic.  A routine assessment of "fair" memory, judgment, and insight, along with mild to moderate GAF scores, does not coincide with "extreme" or "marked" functional limitations.  Further, the record shows that Kent was capable of driving short distances, making smaller meals for herself, and doing some light household chores, even if she needed help with some more onerous tasks.  This evidence supports the ALJ's conclusion that Dr. Marchese's opinion contradicted his own treating notes and the record as a whole.

Kent argues that Dr. Marchese's opinion is entitled to great weight merely because Dr. Marchese is her treating doctor and has expert credentials. Contrary to Kent's claims, the ALJ is not required to accept the opinion of a treating doctor, even one with expert credentials, if the ALJ finds that the opinion is not supported by the doctor's own records or the record as a whole. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (explaining that even a treating physician's opinion may be discounted for "good cause," such as the opinion contradicting the physician's own treatment notes). Furthermore, to the extent Kent relies on Dr. Marchese's professional resume, this information cannot be found in either the administrative record or the record on appeal.[6]

There is no merit to Kent's claim that the ALJ conducted his own "psychiatric analysis" using Dr. Marchese's treatment notes. The ALJ properly considered all of the relevant medical and other evidence, including Dr. Marchese's treatment notes, and assessed Kent's RFC, a determination reserved to the ALJ. See 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c).

For these reasons, we must conclude the ALJ committed no error in weighing Dr. Marchese's opinion and that substantial evidence supports the ALJ's determination that Kent was not disabled.

**AFFIRMED.**

---

[6]Kent's brief also refers to the records of Dr. Mark Khazei, but Kent does not direct our attention to any records of, or references to, this doctor in the record and we could find none.

7